**SO ORDERED: March 11, 2010.**



**Anthony J. Metz III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH GAETANO VECERA AND | ) | Case No. 09-02301-AJM-7 |
| SANDRA MARIE VECERA, | ) | |
| | ) | |
| Debtors. | ) | |

ORDER DENYING THE UNITED STATE'S TRUSTEE'S MOTION TO DISMISS

This matter came before the Court on the motion ("Motion to Dismiss") filed by the Office of the United States Trustee ("UST"), seeking a dismissal of the bankruptcy case of Joseph Gaetano Vecera and Sandra Marie Vecera (the "Veceras" or "Debtors") under 11 U.S.C. § 707(b)(1),(2), and (3). The hearing on the Motion to Dismiss was held on February 10, 2010 wherein the Debtors appeared in person and by counsel, Gary Hostetler and Nicolette Mendenhall; the UST appeared by counsel, Charles Wharton. The Court took the matter under advisement at the conclusion of the hearing. For the reasons stated below the Court DENIES the UST's motion.

1

***Background***

The Debtors filed their chapter 7 case on March 2, 2009 (the "Petition Date").  Because they were above median income debtors, the Debtors were required to complete their means test form ("MTF") to determine their disposable income.  Among the deductions claimed to be set off against their current monthly income were $2077.58 and $313.58 attributable to the Debtors' first and second mortgage payments (the "Mortgage Deduction") on their residence located at 902 Warren Drive, Centerville, Indiana  (the "Property").   On their Chapter 7 Individual Debtor's Statement of Intention, the Debtors stated that they intended to surrender the Property. The Debtors' deductions on the MTF exceeded their current monthly income, resulting in negative disposable income and thus, the presumption of abuse did not arise.  The UST has objected to several of the Debtors' claimed deductions, but it is the objection to the Mortgage Deduction that alone is dispositive of the UST's motion under §707(b)(2).  The UST has also moved to dismiss under §707(b)(3).

***11 U.S.C. § 707(b)(2)***

This Court may dismiss a case filed under Chapter 7 that involves "primarily consumer debts" if the court "finds that the granting of relief would be an abuse of the provisions of this chapter."  11 U.S.C. § 707(b).  Section 707(b)(2), i.e., the "Means Test," is a screening mechanism that determines when a presumption of abuse arises in a bankruptcy case. "Essentially, the means test takes the debtor's currently monthly income ("CMI") and reduces it by amounts corresponding to allowed monthly expenses set out in 11 U.S.C. § 707(b)(2)(A)(ii)-(iv)."  *In re Ross-Tousey*, 549 F.3d. 1148, 1151 (7th Cir. 2008).  Among the allowed expenses against which CMI can be reduced are "average monthly payments on account of secured debts"

2

under Section 707(b)(2)(A)(iii).  Such expenses are calculated as the sum of "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition" divided by 60.  If, after applying allowable expenses against CMI, a debtor's negative disposable income falls below certain thresholds, the presumption of abuse does not arise.  If the presumption of abuse arises under §707(b)(2)(A), a debtor is required to demonstrate special circumstances under § 707(b)(2)(B) in order to rebut the presumption of abuse.

The Debtors here intend to surrender the Property and are not and will not be making the monthly mortgage payments.  The UST contends that only those payments actually to be paid by the Debtors qualify for the §707(b)(2)(A)(iii) deductions as that section is forward looking.  The UST argues that the Debtors' surrender of the Property disqualifies them from taking the Mortgage Deduction since they will not be paying the mortgage payments.

The inquiry of whether the mortgage payments on the surrendered Property qualify as "amounts scheduled as contractually due" starts with the interpretation of §707(b)(2)(A)(iii), and statutory interpretation begins with the language of the statute.  "When the language is plain, the sole function of the courts is to enforce the statute according to its terms." *Ross-Tousey*, at 1157; *Lamie v. United States*, 540 U.S. 526,534, 124 S.Ct. 1023,157 L. Ed.2d 1024 (2004). The primary rule of statutory interpretation is that a court must look first to the statute itself to determine Congress's intent.  *In re Randle*, 358 B.R. 360, 364 (Bankr. N.D.Ill. 2006), *citing U.S. v. Ron Pair Enters, Inc*., 489 U.S. 235, 242 (1989).  The language of the statute should be conclusive of Congress's intent where the language is "expressed in reasonably plain terms." *Griffin v. Oceanic Contractors, Inc*. 458 U.S. 654, 570 (1982).

This Court previously has reviewed the language of § 707(b)(2)(A)(iii) and held that the

3

deduction is allowed for a chapter 7 debtor. See, *In re Cutler*, 2009 WL 2044378 (Bankr. S. D. Ind.)  Cutler and other cases allowing the deduction upon which Cutler relied determined that the "plain meaning" of §707(b)(2)(A)(iii)(I) allowed the deduction because the debtor was contractually obligated to make the mortgage payment as of the date the bankruptcy case was filed.   Thus, § 707(b)(2)(A)(iii) merely required that the amounts be  "contractually due" as of the petition date without regard to a debtor's later surrender or reaffirmation.  *In re Nockerts*, 357 B.R. 497, 500 (Bankr. E. D. Wis. 2006); *In re Randle*, 358 B.R. 360, 363 (Bankr. N. D. Ill. 2006).  This interpretation of § 707(b)(2) finds the Means Test to be a "snapshot" of the debtor's financial circumstances as of the petition date. This Court also found that "a debtor's ability to deduct a mortgage payment which he is contractually obligated to pay on his bankruptcy petition date should be no more suspect than a debtor's ability to deduct transportation ownership expenses for a car he owns free and clear as of the petition date."  Cutler, at *3.  S*ee generally, In re Ross Tousey*, 549 F.3d 1148 (7th Cir. 2008).

### *Turner*

Since this Court's *Cutler* decision, the Seventh Circuit Court of Appeals has considered and concluded that a chapter 13 debtor was *not* entitled to deduct the same expense for purposes of computing "projected disposable income" under Section 1325(b)(1)(B).  *In re Turner*, 574 F.3d 349 (7th Cir. 2009).  The *Turner* court adopted a "forward looking" approach in determining "projected disposable income" and determined that post-petition circumstances could be considered.  Therefore, mortgage payments could not be deducted if the property securing the mortgage was being surrendered.. *Turner*, 574 F.3d at 356.  The UST urges that the same result should prevail here, since calculation of "projected disposable income" incorporates §727(b)(2)'s means test.

4

The goals served by a chapter 7 and a chapter 13 case are quite different. A main congressional objective in adopting the chapter 7 means test was to limit the bankruptcy court's discretion in determining "abuse" under Section 707 by choosing the "certainty" of a mechanical formula over the debtor's actual financial circumstances. See, *In re Rudler*, 576 F.3d 37, 51 (1st Cir. 2009). Conversely, one of the main requirements in a chapter 13 is that all of the debtor's (projected) disposable income be submitted to the plan and that the unsecured creditors recover as much as possible, balanced with the debtor's need to cover expenses. *Turner*, 574 F.3d at 355; *In re Norwood-Hill*, 403 B.R. 905, 910 (Bankr. M. D. Fla. 2009). Given these divergent objectives, this Court holds that *Turner* does not require disallowance of the Mortgage Deduction here, for application of the means test within a chapter 13 case is not interchangeable with its operation within a chapter 7 case. A chapter 13 plan cannot be confirmed over the objection of the chapter 13 trustee or an unsecured creditor unless the plan proposes to pay all of the debtor's "projected disposable income to be received in the applicable commitment period...". 11 U.S.C. §1325(b)(1)(B). Yet, "projected disposable income" is not defined in the Code – but "disposable income" is – and is defined as CMI less "amounts reasonably necessary to be expended" for the maintenance or support of a debtor or a dependent of the debtor. The amounts that are "reasonably necessary" are determined in accordance with §707(b)(2)(A) and (B). Thus "disposable income" in a chapter 13 case is determined by employing §707(b)(2)'s means test. But, it is a debtor's "projected disposable income" that must be devoted to the plan, and "projected disposable income" means something different than "disposable income":

Thus, a distinction can be drawn between a debtor's "disposable income", which is calculated solely on the basis of historical numbers and regional averages, and a debtor's "projected disposable income", which necessarily contemplates a forward - looking number. Under this interpretation, bankruptcy courts will continue to have some discretion over the calculations of each individual debtor's financial situation, with the result that the debtor's

5

"projected disposable income"will end up more closely aligning with reality.  This interpretation also comports with congressional intent that above-median debtors pay the maximum they can afford...Accordingly, we adopt the view shared by many bankruptcy courts that a debtor's "disposable income" calculation ....is a starting point for determining the debtor's "projected disposable income", but that the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances as well as the debtor's actual income and expenses.

*In re Frederickson*, 545 F.3d 652, 659 (8th Cir. 2008); *In re Washburn*, 579 F. 3d 934, 941 (8th

Cir. 2009).

The *Turner* court likewise acknowledged the distinction between "disposable income" and "projected disposable income" when it expressly adopted *Frederickson*:

We therefore agree with the Eighth Circuit in *In re Fredrickson*, 545 F.3d 652, 659-60 (8th Cir. 2008), that while the calculation of "disposable income" in the plan submitted by the debtor "is a starting point for determining the debtor's 'projected disposable income'...the final calculation can take into consideration changes that have occurred in the debtor's financial circumstances".

*Turner*, 574 F.3d at 356.

Given the essential differences between chapter 7 and chapter 13 cases, this Court sees no inconsistency between the holding in *Turner* and allowing the Mortgage Deduction here.  A majority of the courts considering the issue, including the Seventh Circuit, continue to allow chapter 7 debtors to deduct payments on secured debt where the debtor intends to surrender the property securing the debt, and deduction of mortgage payments on property to be surrendered is no exception.  *Ross- Tousey*,  549 F.3d 1148, 1158-60, (7th Cir. 2008) (the plain language of § 707(b)(2)(A)(ii) allows a deduction for vehicle expenses, even where a debtor has no vehicle ownership expense); *Rudler*, 576 F.3d at 45. [1]    Thus, this Court rejects the UST's arguments,

---

[1]  *Rudler* was decided post-*Turner* and the *Rudler* court was certainly aware of the *Turner* decision. Nonetheless, the *Rudler* case expressly limited its holding to chapter 7 cases and noted that "[w]e do not address here the construction of section 707(b)(2)(A)(iii)(1) in the context of a chapter 13 case....Thus, the Seventh Circuit's recent decision [Turner] briefly discussing the provision's language in the context of a Chapter 13 proceeding....which was called to our attention by counsel for the Trustee, is not directly

6

finding that, although *Turner's* forward looking approach applies to cases filed under Chapter 13 and to the calculation of "projected disposable income" under 11U.S.C. § 1325, it does not apply to the determination of "disposable income" and whether the presumption of abuse arises under § 707(b)(2) in chapter 7 cases.  See, *Norwood-Hill*, 403 B.R. at 910 ("The mechanisms, however, of Chapter 13 and Chapter 7  are separate and distinct from one another, and there are different considerations with respect to how issues arising under these respective chapters are handled".)  Seeing nothing in *Turner* that prompts me to depart from my reasoning in *Cutler*, I still find that "the 'plain meaning' of the language found in § 707(b)(2)(A)(iii)(I) is read so as to allow the deduction "because such amounts are 'contractually due".  The debtor was contractually bound to make the payments as of the petition date – and, 'nothing the debtor does or does not do changes the fact that the scheduled payments remain contractually due." *Cutler,* at 3, citing *In re Nockerts*, 357 B.R. 497, 500 (Bankr. E.D. Wis. 2006).  Thus, the Mortgage Deduction should be allowed.

The UST argues that *Turner* requires that application of the means test yield the identical result in a chapter 7 as it does in a chapter 13.  If application of the means test were truly interchangeable, a chapter 13 debtor would be entitled to claim an ownership expense for a car she owns free and clear under *Ross Tousey.*  The UST in the February 10th hearing conceded that such a deduction would not be allowed in a chapter 13.  The Court is convinced that calculations under §707(b)(2) operate differently in chapter 7 and chapter 13 cases and therefore *Turner* does not require the Court to reverse its holding in *Cutler*.  For the above stated reasons, this Court determines that secured debt payments scheduled as contractually due as of the petition date are

---

applicable here.  *Rudler* , 576 F.3d at 45.

to be deducted under § 707(b)(2) whether or not the debtor intends to the surrender the property

securing the debt.    The UST's motion is denied to the extent it seeks dismissal under

§707(b)(2).

### *§707(b)(3)*

Under § 707(b)(3), when this Court is to determine whether "the granting of relief would be

an abuse of the provisions of this chapter," the Court is to consider: "(A) whether the debtor filed

the petition in bad faith; or (b) the totality of the circumstances… of the debtor's financial

situation demonstrates abuse."  The UST has not alleged bad faith here, and thus, dismissal must

be based on the "totality of the circumstances".

Unlike the rigid mechanical means test, the Court has discretion to consider and determine a

debtor's actual financial condition under this section.  In considering the "totality of the

circumstances" , the Court determines (1) whether the bankruptcy petition was filed because of

sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash

advances and made consumer purchases far in excess of his ability to pay; (3) whether the

debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's

schedules and statement of current income and expenses reasonably and accurately reflect the

true financial condition." *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991).[2]  Cutler, at *3.

Although a debtor's ability to pay a distribution to unsecured creditors is a significant factor,

there must be additional indicia of abuse to dismiss a case under § 707(b)(3).  *Cutler*, at *7;

*Nockerts*, at 507; *In re Cribbs*, 387 B.R. 324, 334-336 (Bankr. S.D. Ga. 2008).

The Debtors listed a "monthly rent or home mortgage payment" of $1,100.00 on their

---

[2] The fifth *Green* factor, whether the petition was filed in good faith, is now found in § 707(b)(3)(A).

Schedule J.   Even including their current, actual house payment – a payment $1200 less than their mortgage payments – the Debtors still report disposable income of only $16.07.   The Debtors' Schedule J also list expenses of $1,033.38 for three (3) vehicles, $62.00 for a storage facility, cable and internet at $115.00, cell phone and internet at $225.00, vet expenses at $90.00, and pet food at $115.00. Although Schedule I lists one dependant, it was later clarified that the Debtors have two children below the age of twenty-one, only one of whom resides with them. This Court concludes that, although a few of the Debtors' expenses  could be scaled back to a small degree, none of the actual expenses listed are abusive in themselves and collectively do not require disallowance.  There does not appear to be any specific expense that, if cut out or reduced, would free up enough disposable income to create a meaningful distribution for the unsecured creditors.

Furthermore, even if Schedules I and J demonstrated a palpable "ability to pay", something more is required to show abuse under §707(b)(3)'s "totality of the circumstances" test for above median income debtors.  *Nockerts*, 357 B. R. at 507'; *Cutler* at * 7 .  There are no other indicia of abuse that would lead to a finding of abuse under the "totality of the circumstances" test.  Therefore, the UST's motion under § 707(b)(3) must be denied, as the "totality of the circumstances" do not demonstrate abuse.

Accordingly, the UST's motion to dismiss is DENIED.

# # #


Distribution:

Nicolette Mendenhall/ Gary Hostetler, Attorneys for the Debtors
Charles Wharton, Attorney for the United States Trustee

9

10